# Exhibit A



# Merchant Agreement

Agreement dated April 25, 2016        between **Rapid Capital Finance , LLC ("RCF")** and the merchant listed below ("the **Merchant**").

## MERCHANT INFORMATION

**Merchant's Legal Name:** On Que Food Services Group, LLC **DBA Name:** Way Back Burgers

**Type of entity:** Limited Liability Corp

**State of Formation:** NY

**Principal Address:** 870 Remsen Ave                **City:** Brooklyn           **State:** NY      **Zip:** 11236

**Business Start Date:** 9/20/2013        **Federal Tax ID:** 680683603

**Phone:** (917) 200-6880        **Fax:**                **E-Mail:** qstevens@jakeshamburgers.com

### PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to RCF (making RCF the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Merchant's future accounts, contract rights and other obligations arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business), for the payment of Merchant's sale of goods or services until the amount specified below (the "Purchased Amount") has been delivered by Merchant to RCF.

The Purchased Amount shall be paid to RCF by Merchant's irrevocably authorizing only one depositing account acceptable to RCF (the "Account") to remit the percentage specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each transaction, until such time as RCF receives the full Purchased Amount. Merchant hereby authorizes RCF to ACH Debit the specified remittances (the "Specific Amount") from the merchant's bank account on a Daily             basis and will provide RCF with all required access codes, and monthly bank statements. Merchant understands that it is responsible for ensuring that the specified percentage to be debited by RCF remains in the account and will be held responsible for any fees incurred by RCF resulting from a rejected ACH attempt or an event of default. (See Appendix A) RCF is not responsible for any overdrafts or rejected transactions that may result from RCF' ACH debiting the specified amounts under the terms of this agreement. RCF will debit the Specific Amount each period and upon receipt of the merchant's monthly bank statements to reconcile the merchant's account by either crediting or debiting the difference from or back to the merchant's bank account so that the amount debited per month equals the Specified Percentage. It is solely the merchant's responsibility to send all of their bank statements and a missed month forfeits all future reconciliations. Notwithstanding anything to the contrary in this Agreement or any other agreement between RCF and Merchant, upon the violation of any provision contained in Section 1.11 of the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under Section 3 of the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all fees applicable under this agreement is contained in Appendix A.

| Purchase Price | Specified Percentage | Specific Amount | Purchased Amount |
|---|---|---|---|
| $ 27,000 | 13   % | $165.00 | $36,180 |

Initials:

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH ON PAGE 2, THE "MERCHANT SECURITY AGREEMENT" AND "ADMINISTRATIVE FORM HEREOF ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.

To the extent set forth herein, each of the parties is obligated upon his, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each of above-signed Merchant and Owner(s) represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to repay this obligation and that the information provided herein and in all of RCF documents, forms and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements between Merchant and RCF and RCF shall be entitled to all remedies available under law. RCF may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant via Processor and/or Operator to RCF. An investigative or consumer report may be made in connection with the Agreement. Merchant and each of the above- signed  Owners authorizes RCF, its agents and representatives and any credit reporting agency engaged by RCF, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as Merchant and/or Owners(s) continue to have any obligation owed to RCF as a consequence of this Agreement or for RCF's ability to determine Merchant's eligibility to enter into any future agreement with Company.

## MERCHANT AGREEMENT TERMS AND CONDITIONS

### I. TERMS OF ENROLLMENT IN PROGRAM

**1.1  Merchant Deposit Agreement**.  Merchant shall execute an agreement (the "Merchant Deposit Agreement") acceptable to RCF, with a Bank acceptable to RCF, to obtain  electronic  fund transfer services. Merchant shall provide RCF and/or its authorized agent with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts and deposits into the account. Merchant shall authorize RCF and/or it's agent to deduct the amounts owed to RCF for the Receipts as specified herein  from settlement  amounts  which  would otherwise  be due to Merchant  from  electronic check transactions and to pay such amounts to RCF by permitting RCF to withdraw the specified percentages by ACH debiting the account. The authorization  shall  be irrevocable  without  the written consent of RCF.

**1.2  Term of Agreement.**  This Agreement shall remain in full force and effect until such time as the full Purchased Amount has been delivered by Merchant to RCF.

**1.3 Future Purchases.**  Reserved

**1.4 Financial Condition.** Merchant and Guarantor(s) authorize RCF and its agents to investigate  their  financial  responsibility  and history, and will provide to RCF any bank or financial  statements, tax  returns, etc., as  RCF deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. RCF is authorized to update such information and financial profiles from time to time as it deems appropriate.

**1.5 Transactional History.** Merchant authorizes their  bank  to  provide  RCF  with  Merchant's banking  or  processing  history to determine qualification or continuation in this program.

**1.6 Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by RCF for monies owed to RCF from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by RCF.

**1.7 No Liability.** In no event will RCF be liable for  any  claims  asserted  by  Merchant  under any legal  theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special,  incidental,  indirect  or  consequential damages, each of which  is  waived  by  Merchant and Guarantor(s).

**1.8 Reliance on Terms.** Section 1.1, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, RCF and Processor, and notwithstanding  the  fact  that  Processor  is  not a party of this Agreement, Processor may rely upon their  terms  and  raise  them as a  defense  in  any action.

**1.9 Sale of Receipts.**  Merchant  and  RCF  agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed  as  a loan  from  RCF  to  Merchant. Merchant agrees that the Purchase Price is in exchange  for  the  Receipts  pursuant  to  this Agreement equals the fair market value of  such Receipts. RCF has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Receipts transferred to RCF in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services and the payment therefore by Merchant's customers in the manner provided in Section 1.1. In no event shall the aggregate of all amounts be deemed as interest hereunder and charged  or collected  hereunder exceed the highest rate permissible at law. In the event that a court determines that RCF has charged  or  received  interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall  automatically  be  reduced  to  the  maximum rate permitted by applicable law and RCF  shall promptly refund to Merchant any interest received by RCF in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and  that  RCF  not receive  or  contract to receive,  directly  or  indirectly  in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law.

**1.10  Power of Attorney.**  Merchant  irrevocably appoints RCF as its agent and attorney-in-fact with full  authority to take any action or execute any instrument  or  document  to  settle  all  obligations due to RCF from Processor, or in the case of a violation by Merchant  of  Section  1.12  or  the  occurrence of an Event of Default under Section 4 hereof, from  Merchant,  under  this

Initials:

Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to RCF; and (v) to file any claims or take any action or institute any proceeding which RCF may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount.

**1.11 Protections Against Default.** The following

Protections 1 through 7 may be invoked by RCF, immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the RCF electronic check processor; (b) Merchant changes its arrangements with Processor in any way that is adverse to RCF; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check transactions to another processor; (d) Merchant interrupts the operation of this business (other than adverse weather, natural disasters or acts of God) transfers, moves, sells, disposes, transfers or otherwise conveys its business or assets without (i) the express prior written consent of RCF, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to RCF; or (e) Merchant takes any action, fails to take any action, or offers any incentive-economic or otherwise-the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to RCF at law, in equity or otherwise pursuant to this Agreement.

Protection 1. The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately

Protection 2. RCF may enforce the provisions of the Personal Guarantee of Performance against the Guarantor.

Protection 3. Merchant shall, upon execution of this Agreement, deliver to RCF an executed confession of judgment in favor of RCF in the amount of the Purchase Amount stated in the Agreement. Upon breach of any provision in this paragraph 1.11, RCF may enter that confession of judgment as a judgment with the Clerk of the Court and execute thereon.

Protection 4. RCF may enforce its security interest in the Collateral identified in Article III hereof.

Protection 5. The entire Purchase Amount shall become immediately refundable to RCF from Merchant.

Protection 6. RCF may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, in which RCF shall recover judgment against Merchant, Merchant shall be liable for all of RCF's costs of lawsuit, including but not limited to all reasonable attorneys' fees and court costs.

Protection 7. Merchant shall, upon execution of this Agreement, deliver to RCF an executed assignment of lease of Merchant's premises in favor of RCF. Upon breach of any provision in this paragraph 1.12, RCF may exercise its rights under such assignment of lease.

Protection 8. RCF may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer- generated check drawn on Merchant's bank account or otherwise.

**1.12 Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner, in respect of himself or herself personally, authorizes RCF to disclose information concerning Merchant's and each Owner's credit standing (including credit bureau reports that RCF obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner hereby waives to the maximum extent permitted by law any claim for damages against RCF or any of its affiliates relating to any (i) investigation undertaken by or on behalf of RCF as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**1.13 Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by RCF, including this Agreement and any other RCF documentations (collectively, "Confidential Information") are proprietary and confidential information of RCF. Accordingly unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of RCF to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this Section 1.13.

**1.14 Publicity.** Merchant and each Owner only authorizes RCF to use its, his or her name in a listing of clients and in advertising and marketing materials with their express written consent.

**1.15 D/B/A's.** Merchant hereby acknowledges and agrees that RCF may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between RCF and Merchant, including the filing of UCC-1 financing statements and other notices or filings, REPRESENTATIONS, WARRANTIES AND COVENANTS. Merchant represents warrants and covenants that as of this date and during the term of this Agreement:

**2.1 Financial Condition and Financial Information.** Its bank and financial statements, copies of which have been furnished to RCF, and future statements which will be furnished hereafter at the discretion of RCF, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise RCF of any material adverse change in its financial condition, operation or ownership. RCF may request statements at any time during the performance of this Agreement and the Merchant shall provide them to RCF within 5 business days. Merchant's failure to do so is a material breach of this Agreement.

Initials: LR S

**2.2 Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

**2.3 Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.4 Reserved**

**2.5 Reserved**

**2.6 Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and RCF or change any of its places of business.

**2.7 Daily Batch Out**. Merchant will batch out receipts with the Processor on a daily basis.

**2.8 Estoppel Certificate.** Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from RCF to Merchant, execute, acknowledge and deliver to RCF and/or to any other person, person firm or corporation specified by RCF, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

**2.9 Bankruptcy.** Merchant, Guarantor(s) and principal(s) acknowledge and agree that going bankrupt or going out of business, in and of itself, does not constitute a breach of the Merchant's Contractual Covenants.

**2.10 Working Capital Funding.** Merchant shall not enter into any arrangement, agreement or commitment that relates to or involves the receipts, whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales with any party other than RCF.

**2.11 Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of RCF.

**2.12 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**2.13 Default Under Other Contracts.** Merchant's execution of and/or performance under this Agreement will not cause or create an event of default by Merchant under any contract with another person or entity.

**EVENTS OF DEFAULT AND REMEDIES**

**3.1 Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made; (c) the sending of notice of termination by Guarantor; (d) Merchant shall transfer or sell all or substantially all of its assets; (e) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (f) Merchant shall use multiple depository accounts without the prior written consent of RCF; (g) Merchant shall change its depositing account without the prior written consent of RCF; (h) Merchant shall perform any act that reduces the value of any Collateral granted under this Agreement; or (i) Merchant shall default under any of the terms, covenants and conditions of any other agreement with RCF.

**3.2 Remedies.** In case any Event of Default occurs and is not waived pursuant to Section 4.4.1 hereof, RCF may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Guaranty or any other legal or equitable right or remedy. All rights, powers and remedies of RCF in connection with this Agreement may be exercised at any time by RCF after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.3 Costs.** Merchant shall pay to RCF all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of RCF's remedies set forth in Section 4.2 above, including but not limited to court costs and attorneys' fees.

**3.4 Required Notifications.** Merchant is required to give RCF written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give RCF seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

**MISCELLANEOUS**

**4.1 Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by RCF.

**4.2 Assignment.** RCF may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

**4.3 Notices.** All notices, requests, consent, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective only upon receipt.

**4.4 Waiver Remedies.** No failure on the part of RCF to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive

Initials:

of any remedies provided by law or equity.

**4.5 Binding Effect; Governing Law, Venue and Jurisdiction.** This Agreement shall be binding upon and inure to the benefit of Merchant, RCF and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of RCF which consent may be withheld in RCF's sole discretion. RCF reserves the rights to assign this Agreement with or without prior written notice to Merchant. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if RCF so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). Merchant agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant waives any right to oppose any motion or application made by RCF to transfer such proceeding to an Acceptable Forum.

**4.6 Survival of Representation, etc.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**4.7 Severability.** In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

**4.8 Entire Agreement.** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and Security Agreement hereto embody the entire agreement between Merchant and RCF and supersede all prior agreements and understandings relating to the subject matter hereof.

**4.9 JURY TRIAL WAIVER**. THE PARTIES HERETO WAIVE TRIAL B Y JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

**4.10 CLASS ACTION WAIVER**. THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

**4.11 Facsimile Acceptance.** Facsimile signatures shall be deemed acceptable for all purposes.

**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION**

**For the MERCHANT:** On Que Food Services Group, LLC      **/DBA/** Way Back Burgers

Signed By: Quillens Stevens

Title: Owner

Date: 04/25/2016

**For Rapid Capital Finance, LLC:**

Signed By: Kristine Hernandez

Title: Funding Director

Date:

5

Initials:

# Rapid Capital Finance, LLC – Security Agreement and Guaranty

**Merchant's Legal Name:** On Que Food Services Group, LLC    **DBA Name:** Way Back Burgers

**Physical Address:** 870 Remsen Ave                **City:** Brooklyn                **State:** NY    **Zip:** 11236

**Federal Tax ID:** 680683603                **Phone:** (917) 200-6880        **Fax:**

## SECURITY AGREEMENT

<u>Security Interest</u>: To secure Merchant's payment and performance obligations to RCF under the Merchant Agreement (the "<u>Factoring Agreement</u>"), Merchant hereby grants to RCF a security interest in (a) all accounts (excluding any accounts receivable or other obligations owed to the Merchant directly from its consumers), chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant; and (b) all proceeds, as that term is defined in Article 9 of the UCC (a and b collectively, the "<u>Collateral</u>").

<u>Cross-Collateral</u>: To secure Guarantor's payment and performance obligations to RCF under this Security Agreement and Guaranty (the "<u>Agreement</u>"), Guarantor hereby grants RCF a security interest in On Que Food Services Group, LLC
/**DBA** Way Back Burgers                    (the "<u>Additional Collateral</u>"). Guarantor understands that RCF will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement.

Merchant and Guarantor each acknowledge and agree that any security interest granted to RCF under any other agreement between Merchant or Guarantor and RCF (the "<u>Cross-Collateral</u>") will secure the obligations hereunder and under the Merchant Agreement.

Merchant and Guarantor each agrees to execute any documents or take any action in connection with this Agreement as RCF deems necessary to perfect or maintain RCF's first priority security interest in the Collateral, the Additional Collateral and the Cross-Collateral, including the execution of any account control agreements. Merchant and Guarantor each hereby authorizes RCF to file any financing statements deemed necessary by RCF to perfect or maintain RCF's security interest, which financing statement may contain notification that Merchant and Guarantor have granted a negative pledge to RCF with respect to the Collateral, the Additional Collateral and the Cross-Collateral, and that any subsequent lienor may be tortuously interfering with RCF's rights. Merchant and Guarantor shall be liable for and RCF may charge and collect all costs and expenses, including but not limited to attorney's fees, which may be incurred by RCF in protecting, preserving and enforcing RCF's security interest and rights.

<u>Negative Pledge</u>: Merchant and Guarantor each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral, the Additional Collateral or the Cross-Collateral, as applicable.

<u>Consent to Enter Premises and Assign Lease:</u> RCF shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, RCF may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that RCF may enter into an agreement with Merchant's landlord giving RCF the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and (b) to assign Merchant's lease to another qualified Merchant capable of operating a business comparable to Merchant's at such premises.

<u>Remedies</u>: Upon any Event of Default, RCF may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing, whether by acceleration or otherwise.

## GUARANTY

<u>Personal Guaranty of Performance:</u> The undersigned Guarantor(s) hereby guarantees to RCF, Merchant's performance of all of the representations, warranties, covenants made by Merchant in this Agreement and the Merchant Agreement, as each agreement may be renewed, amended, extended or otherwise modified (the "<u>Guaranteed Obligations</u>"). Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in this Agreement and the Merchant Agreement.

Initials: _LS_

Guarantor Waivers: In the event that Merchant fails to perform any obligation when due under the Merchant Agreement, RCF may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral, Additional Collateral or Cross-Collateral RCF may hold pursuant to this Agreement or any other guaranty.

RCF does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to perform any obligations  under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) RCF's acceptance of this Agreement ; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to RCF. In addition, RCF may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement : (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to RCF; (ii) release Merchant from its obligations to RCF; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor. Until the Purchased Amount plus any accrued but unpaid fees and Merchant's other obligations to RCF under the Merchant Agreement and this Agreement are performed in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation ; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that RCF must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

Guarantor Acknowledgement: Guarantor acknowledges that: (i) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

Joint and Several Liability: The obligations hereunder of the persons or entities constituting Guarantor under this Agreement are joint and several.

**THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.**

**GUARANTOR(S) AND FOR THE MERCHANT:**

Date: 04/25/2016

Quillens Stevens,  628 Cozumel Street,  Grand Prairie,  TX,  75051

Initials:

# APPENDIX A:  Fee Structure Addendum

| | | |
|---|---|---|
| A. | Administrative/UCC Filing Fee | **$** 495.00 |
| B. | ACH Program Fee | **$** 595.00 |
| C. | NSF Fee (Standard) | **$35.00 (each)** Max of FOUR TIMES ONLY before default is declared. |
| D. | Rejected ACH | **$ 100.00** when the merchant directs bank to reject our scheduled debit ACH . |
| E. | Bank Change Fee | **$50.00** when merchant requires a change of account to be debited requiring us to adjust our system. |
| F. | Blocked Account | **$2,500.00** when merchant BLOCKS account from our scheduled ACH which places them in default (per Receivable Purchase Agreement). |
| G. | Default Fee | **$2,500.00** |
| H. | Miscellaneous Service Fees | Merchant shall pay certain fees for services related to the origination and maintenance of accounts. Each Merchant shall receive their funding electronically to their designated bank account and will be charged **$45.00** for a federal wire transfer or **$15.00** ACH transfer. |

**Merchant hereby agrees:**

Signed By: Quillens Stevens

Title:  Owner

Date:  04/25/2016

Initials:

# Antistacking Addendum

This Addendum (the "Addendum") is made and entered into as of April 25, 2016 (the "Effective Date") by and between **Rapid Capital Finance, LLC** ("RCF") a Florida, Limited Liability Company, the business address of which is 11900 Biscayne Blvd. Ste 201, Miami FL, and  On Que Food Services Group, LLC         /DBA/ Way Back Burgers
("Merchant") a  Limited Liability Corp the business address of which is:
870 Remsen Ave, , Brooklyn, NY, 11236

## RECITALS

A.  On or about April 25, 2016         RCF and Merchant executed and delivered that certain Receivables Purchase Agreement (the "RPA"); and

B. RCF and   Merchant have   agreed  to certain  items  with respect  to   their business relationship under the RPA desire to memorialize such understanding and agreements.

**NOW, THEREFORE,** for and in consideration of the foregoing Recitals and the mutual covenants and agreements set forth herein, the parties agree as follows:

1. Capitalized terms used but not otherwise defined in this Agreement will have the meanings set forth in the RPA.

2. Merchant hereby acknowledges and agrees as follows:

a. As long as the Merchant has not forwarded to RCF the entire Purchased Amount, Merchant will not undertake any other financing or sell their future receivables to any other than RCF without  the express prior written consent of RCF, and

b. Merchant's failure to abide by the terms of this Addendum will be deemed a Termination Event under the RPA and Merchant and its owners(s) and guarantors(s) will  immediately be  liable  for  the  full  balance  of  the  then  outstanding Purchased Amount, and

c. Without Merchant's execution of this Addendum, RCF would not be willing to enter in the   RPA with Merchant, and the execution of such RPA by RCF is sufficient consideration for Merchant to enter into this Addendum.

3. This Addendum, constitutes the entire agreement between the parties regarding the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings.

4.   In the event of a conflict between this Addendum and the RPA as it relates to the subject matter hereof, the terms of this Addendum shall control.  Otherwise, all terms and conditions of the RPA will remain in full force and effect and likewise apply to this Addendum.

5. This Addendum may be executed in one or more counterparts, and by different parties on different counterparts, each of which shall be considered an original and all of which shall be considered one and the same agreement. One or more counterparts of this Addendum may be delivered by facsimile transmission with the intent that it or they shall constitute an original counterpart hereof.

**For the MERCHANT:** On Que Food Services Group, LLC       /DBA/ Way Back Burgers

_____

Signed By: Quillens Stevens

Title: Owner
Date: 04/25/2016

**For Rapid Capital Finance, LLC:**

_____

Signed By:  Kristine Hernandez

Title: Funding Director
Date:

Initials:

# WAIVED BANK LOGIN AUTHORIZATION

Dear Merchant,

Thank you for accepting this offer from Rapid Capital Finance LLC. We look forward to being your funding partner for as long as you need.

The Rapid Capital Finance LLC ACH Program requires viewing access to your bank account each month. If Bank Login access is waived, it is solely the merchant's responsibility to send all of their bank statements to reconcile their account by either crediting or debiting the difference from or back to the merchant's bank account so that the amount debited per month equals the specified percentage.

Merchant has until the fifteenth of each month to provide Rapid Capital Finance LLC with the previous month's bank statement.

## AGREED AND ACKNOWLEDGED:

**For the MERCHANT:** On Que Food Services Group, LLC        **/DBA/** Way Back Burgers

870 Remsen Ave                        **City:** Brooklyn              **State:** NY    **Zip:** 11236

Title: Owner

Signed By: Quillens Stevens                    Date: 04/25/2016

## NOTE: All Bank statements should be emailed to
**bankstatements@rapidcapitalfunding.com**

Initials: